IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

MARYANN COTTRELL and
RICHARD G. HOLLAND,

   Plaintiffs,

  v.

ROWAN UNIVERSITY, et al.,

   Defendants.

CIVIL NO. 08-1171(NLH)(JS)

**OPINION**

**APPEARANCES:**
MARYANN COTTRELL
RICHARD G. HOLLAND
31 SOUTH ACADEMY STREET
GLASSBORO, NJ 08028

  Appearing *pro se*

DANIEL F. DRYZGA, JR.
MELISSA THERSA DUTTON
OFFICE OF NJ ATTORNEY GENERAL
R.J. HUGHES JUSTICE COMPLEX
P.O. BOX 112
TRENTON, NJ 08625-0112

  On behalf of defendants

**HILLMAN**, District Judge

  This matter involves plaintiffs' claims that defendants violated the Americans with Disabilities Act, New Jersey's Law Against Discrimination, the New Jersey Civil Rights Act, and their First Amendment, Due Process, and Equal Protection constitutional rights when they banned plaintiffs from entering the Rowan University campus, and terminated plaintiff Richard Holland's employment.  Defendants have moved for summary judgment on all of plaintiffs' claims.  For the reasons expressed below

defendants' motion will be granted.

## BACKGROUND

Plaintiff Maryann Cottrell is the mother of a severely disabled daughter, and she and plaintiff Richard Holland share the responsibility of her care.  Plaintiffs are advocates for the disabled, and they inform local authorities about businesses that fail to maintain handicap accessible parking and fail to discourage unauthorized use of handicapped parking spaces. Plaintiffs have filed numerous cases throughout this District against businesses for their ADA-violative conduct.  This case concerns plaintiffs' enforcement activities on the campus of Rowan University in Glassboro, New Jersey.  Intertwined with their claims regarding their handicapped parking violation monitoring efforts are claims regarding Holland's termination from employment with Rowan as a groundskeeper.

Beginning in September 2005, plaintiffs focused their attention on handicapped parking violations on Rowan's campus. Over the course of the fall semester, plaintiffs observed what they perceived to be handicapped space parking violations.  They would approach the alleged perpetrators, take photos or video of them and their vehicles, and file citizens complaints against them for prosecution in municipal court.  Several of these alleged perpetrators reported to Rowan University officials that they had been harassed, frightened, and threatened by the plaintiffs and their conduct.  Rowan University security

personnel also reported that plaintiffs were uncooperative, rude, and confrontational with them while they tried to address plaintiffs' interactions with the alleged parking violators.

Although plaintiffs dispute that their enforcement activities caused any consternation to Rowan students, staff, visitors or administration, by January 30, 2006, their conduct over the course of several months resulted in Rowan University issuing them a trespass letter banning them from campus.  (Def. Ex. C.)  The letter informed them that they could appeal that decision in writing within fifteen days.

Cottrell filed a letter of appeal; Holland did not. Cottrell was notified on March 15, 2006 that a hearing on her appeal would be held on March 30, 2006.  The letter, issued by defendant Edward Schoen, the Dean of the College of Business who would be serving as the hearing officer, informed her that she would be able to present evidence, including witnesses, at the hearing concerning the ten specific incidents listed in the January 30, 2006 trespass notice.  Schoen told Cottrell that if she did not participate in the hearing it would still proceed in her absence.  (Def. Ex. Y.)  Schoen also informed Cottrell of the evidentiary standard he would follow in weighing of the evidence. If she was not satisfied with his decision, Schoen told her that she could file an appeal with defendant Drew Calandrella, Rowan University's Vice President for Student Affairs.  If Cottrell did not appeal Schoen's decision, it would become final; if she did

not appeal Calandrella's decision, it would become final.  Should she wish to appeal Calandrella's decision, Schoen informed Cottrell that she would then need to take the matter to the Appellate Division of the New Jersey Superior Court.

On March 30, 2006, Cottrell appeared at the hearing before Schoen.  She refused to participate, however, because her request for a continuance was rejected.  Cottrell claims that she had asked for a continuance because she was handed a "discovery packet" minutes prior to the hearing, and did not have time to prepare.  She also refused to participate in the hearing because it would not be recorded, it was not "sanctioned" by any court, and Schoen was not a "judge of any magnitude with the State of New Jersey."  (Pl. Br. at 10.)

At the hearing, held in Cottrell's absence, testimony was presented by ten witnesses, and eleven incident reports were accepted into the record.  On April 10, 2006, Schoen issued a nine-page hearing decision, in which he found that in ten documented incidents, Cottrell acted hostile, harassing, disruptive, and aggressive to Rowan University staff, students, and visitors, including a nine year old child, a diabetic pregnant woman, and a student with spinal meningitis.  Schoen found that the trespass notice was correctly issued to Cottrell, and that she was banned from campus until June 1, 2008.  If she were to enter the campus without prior authorization from the public safety office during that time, she would be subject to

4

arrest.  (Def. Ex. Z.)  Holland was banned for the same period
for the same reasons.  Neither Cottrell nor Holland appealed that
decision to Calandrella or the New Jersey Superior Court.[1]

During this time, pending was an appeal by Holland of his
1997 termination from employment with Rowan University.  In 1997,
Holland had been hired as a groundskeeper, but was terminated two
months later due to a conviction for possession of fifty grams of
marijuana with intent to distribute.  Holland appealed both his
termination and his criminal conviction.  Ultimately, his
criminal conviction was overturned,[2] and his position at Rowan
reinstated.  See In re Holland, 2007 WL 2570222, *1 (N.J. Super.
Ct. App. Div. 2007).  In March 2008, Holland returned to work at
Rowan as a groundskeeper.  Because of Holland's return to work,
Rowan lifted his trespass ban three months early.

Holland only worked for Rowan for five months.  During that

---

[1]On March 24, 2006 and December 8, 2006, Cottrell filed
Title II, Section 504 Complaints against Rowan with the U.S.
Department of Education regarding Rowan's failure to maintain a
"transitional plan." The purpose of a Self-Evaluation, Needs
Assessment and Transition Plan is to determine if an agency is in
compliance with Section 504 of the Rehabilitation Act of 1973 and
with the Americans with Disabilities Act.  Rowan complied with
this requirement on May 1, 2007.  (Def. Ex. EE.)

[2]His appeals took approximately five years but, ultimately,
the Supreme Court overturned the conviction for possession of
marijuana.  The Court found that the evidence against Holland had
to be suppressed as fruit of a prior impermissible warrant-less
search.  State v. Holland, 176 N.J. 344, 363-65 (2003).  The
local prosecutor then declined to pursue the matter further and
the criminal indictment was dismissed.  See In re Holland, 2007
WL 2570222, *1 (N.J. Super. Ct. App. Div. 2007).

time, Holland received unsatisfactory progress reports due to his failure to properly perform his grounds maintenance duties, unauthorized breaks, taking excessive personal calls on his cell phone, taking maintenance department vehicles to areas of campus not relevant to his work, taking pictures during work hours, tape recording conversations without the consent of co-workers and supervisors, making co-workers feel uncomfortable, and excessive absences.  On May 9, 2008, sixteen grounds department employees sent the Office of Employee Relations and Office of Equity and Diversity a joint letter complaining that Holland's behaviors and actions were "detrimental and intimidating to the inner-workings of the department."  (Def. Ex. QQ.)   Twelve separate letters were also separately sent by grounds department employees complaining about Holland.  (Def. Exs. II, JJ, KK, LL, OO, PP, RR, SS, TT, UU, VV, and WW.)   Additionally, a Rowan secretary, not in the grounds department, complained about Holland's behavior and expressed that she was threatened by Holland's presence.  (Def. Ex. ZZ.)  On July 12, 2008, Holland was terminated from employment at the end of his working test period due to two unsatisfactory progress reports, which detailed his sub-par performance and other conduct.

Two additional incidents occurred on Rowan's campus that, upon amending their complaint, became part of plaintiffs' current suit.  On August 27, 2008, a mother of a student filed a report to campus police stating that Cottrell approached her with a

6

video camera very near to her face, causing her to fear for her
safety.  The mother was delivering medicine to her son, who was a
Rowan student.

On August 30, 2008, during student move-in day, the parking
lots adjacent to the residence halls were closed to vehicles, and
only students and their families were allowed to drop off their
belongings at the curb and then move along.  Students with
disabilities were given special access.  Both plaintiffs entered
the parking lot of one residence hall, refused to move their
parked vehicle, yelled at various security personnel and
confronted the president of the university.  Plaintiffs
complained about the covered handicapped parking signs and how
Rowan security allowed cars to illegally park at the curb and in
the handicapped parking area.[3]

As a result of these two incidents, on September 19, 2008,
Rowan issued plaintiffs a warning notice.  (Def. Ex. AAA.)  The
notice detailed the two incidents on August 27 and 30, and
informed plaintiffs that "if you engage in further disruptive
activity on the Rowan University Campus, interfering with the
University's operations, a trespass notice will be issued to you,
pursuant to N.J.S.A. 2C:18-3."  (Id.)  No trespass notice was
issued pursuant to this warning.

_____

[3]Relatedly, plaintiffs filed a motion for an injunction
regarding the August 2010 student move-in days.  In their motion,
plaintiffs requested an injunction against Rowan to allow
plaintiffs to observe the 2010 student move-in days.  The Court
denied their request.  (See Docket No. 66.)

On April 10, 2008, plaintiffs filed their complaint, later amended on July 10, 2009, against Rowan University, Timothy Michener,[4] Drew Calandrella,[5] Edward J. Schoen, Rowan University Police Department, and Edward Thompson.  Plaintiffs claim that defendants violated their rights under the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA"), New Jersey's Law Against Discrimination, N.J.S.A. 10:5-1 et seq. ("NJLAD"), and New Jersey's Civil Rights Act, N.J.S.A. 10:6-1 et seq., as well as violated their First Amendment, Due Process and Equal Protections right under the U.S. Constitution.  Defendants have moved for summary judgment in their favor on all of plaintiffs' claims.  Plaintiffs have opposed defendants' motion.

## DISCUSSION

**A.    Jurisdiction**

Plaintiffs have brought their claims pursuant to 42 U.S.C. § 1983, as well as pursuant to New Jersey state law.  This Court has jurisdiction over plaintiffs' federal claims under 28 U.S.C. § 1331, and supplemental jurisdiction over plaintiffs' state law claims under 28 U.S.C. § 1367.

---

[4]Timothy Michener passed away on April 9, 2009.  Plaintiffs have not filed a substitution of party.  Therefore, plaintiffs' claims against Michener are dismissed.  Fed. R. Civ. P. 25(a).

[5]Drew Calandrella was never properly served with plaintiffs' complaint.  Thus, Calandrella is not a defendant in this case, and plaintiffs' claims against him are dismissed.

8

**B.    Summary Judgment Standard**

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id. Thus, to withstand a properly supported motion

9

for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

   **C.   Analysis**

   Plaintiffs' claims can be separated into several categories. Both plaintiffs have asserted claims for discrimination and retaliation under the ADA and NJLAD, and for violations of their constitutional rights and rights under the New Jersey Civil Rights Act.  Separately, Holland has asserted claims for employment discrimination and retaliation relating to his termination from his job at Rowan in the grounds department.  Each category of claims will be addressed in turn.

   **1.   Plaintiffs' discrimination claims under the ADA and NJLAD**

   Judgment must be entered in defendants' favor on plaintiffs' claims that when they were banned from campus in January 2006 they were discriminated against in violation of the ADA and NJLAD because plaintiffs lack standing to bring such claims.[6]  The ADA

---

[6]The doctrine of standing is based both on prudential concerns and on constitutional limitations on the jurisdiction of the federal courts.  Bennett v. Spear, 520 U.S. 154, 162 (1997). In order to establish an injury in fact, a plaintiff must have suffered an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.  Lujan v. Defenders of Wildlife, 504

and NJLAD both proscribe discrimination based on a person's disability in places of public accommodation.[7]  42 U.S.C. § 12182; N.J.S.A. 10:5-12(f).  An element of a plaintiff's prima facie case for discrimination claims arising under the ADA and NJLAD is that the plaintiff is disabled.  In order to succeed on a discrimination claim under the ADA, a plaintiff must prove that he was discriminated against on the basis of his disability.  Access 4 All, Inc. v. ANI Associates, Inc., 2007 WL 2793373, 5 (D.N.J. 2007); Lee v. Sherrer, 2009 WL 901777, 5 (D.N.J. 2009); see also Cleveland v. Policy Management Systems Corp., 526 U.S. 795, 806 (1999) ("An ADA plaintiff bears the burden of proving that she is a 'qualified individual with a disability.'").  A

_____

U.S. 555, 560 (1992) (citations omitted).  Additionally, there must be a causal connection between the injury and the conduct complained of; that is, the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.  Id. (citations omitted).  It must also be "likely," as opposed to merely "speculative," that the injury will be redressed by a favorable decision.  Id. at 561. (citations omitted).

[7]The ADA provides, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182.

The NJLAD provides, "For . . . any place of public accommodation directly or indirectly to refuse, withhold from or deny to any person any of the accommodations, advantages, facilities or privileges thereof, or to discriminate against any person in the furnishing thereof, or directly or indirectly . . . on account of . . . disability ."  N.J.S.A. 10:5-12(f).

plaintiff must prove the same thing for a NJLAD claim.  D.B. v. Bloom, 896 F. Supp. 166, 171 (D.N.J. 1995) (explaining that one of the elements of a prima facie case for a discrimination claim based on denied access to a place of public accommodation is that the plaintiff is disabled); Olson v. General Elec. Astrospace, 101 F.3d 947, 956 (3d Cir. 1996) (noting that it is a plaintiff's burden to prove he is disabled in order to support a NJLAD discrimination claim); Victor v. State, 952 A.2d 493, 501 (N.J. Super. Ct. App. Div. 2008) ("New Jersey courts have articulated the elements of a prima facie case of discrimination, identifying the following common factors: (1) plaintiff was handicapped or disabled within the meaning of the statute . . . .").

Plaintiffs are not disabled.  Cottrell is the mother of a disabled child, and Holland is Cottrell's companion and fellow caregiver.  The disabled child is not a plaintiff in this case. It is only because of plaintiffs' relationship with the disabled child, who plaintiffs state requires constant care and attention, that they are lawfully entitled to park in handicapped parking spaces.  As this Court noted in a different case involving these plaintiffs, "plaintiffs have not provided any basis that the ADA and NJLAD requirement that a plaintiff be disabled should be extended to include caregivers of a disabled person.  Simply because a person is authorized by law to park in a handicapped space does not mean he is 'disabled' in the context of an ADA or

12

NJLAD discrimination claim." <u>Cottrell v. J & R Discount Liquor Gallery, Inc.</u>, 2009 WL 1085729, *4 (D.N.J. April 21, 2009) (NLH). Consequently, because plaintiffs are not disabled, they do not have standing to bring a discrimination claim under the ADA or NJLAD.  <u>See</u> <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992) (providing that in order to establish an injury in fact, a plaintiff must have suffered an invasion of a legally protected interest).

### 2.   Plaintiffs' retaliation claims under the ADA and NJLAD

Plaintiffs allege that when they were banned from campus in January 2006, and then again received a warning notice in September 2008, defendants acted improperly in retaliation for plaintiffs' ADA and NJLAD protected activities.  These claims fail.

In contrast to a discrimination claim, a claim for retaliation under the ADA and NJLAD does not require a plaintiff to demonstrate that he is disabled.  The ADA and NJLAD make it unlawful to retaliate against or intimidate any individual because he or she has opposed any act or practice made unlawful by the ADA or NLJAD.[8]  42 U.S.C. § 12203; N.J.S.A. 10:5-12(d)(e);

---

[8]The ADA provides,

(a) Retaliation
No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified,

Krouse v. American Sterilizer Co., 126 F.3d 494, 502 (3d Cir. 1997) ("Unlike a plaintiff in an ADA discrimination case, a plaintiff in an ADA retaliation case need not establish that he is a 'qualified individual with a disability.'").  To prove a prima facie case of retaliation under the ADA or the NJLAD, the plaintiff must demonstrate by a preponderance of the evidence that (1) she engaged in a protected activity; (2) she suffered an adverse action; and (3) a causal connection exists between the

---

assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

     (b) Interference, coercion, or intimidation
It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

42 U.S.C. § 12203.

     The NJLAD provides,

     It shall be unlawful discrimination . . .

     d.   For any person to take reprisals against any person because that person has opposed any practices or acts forbidden under this act or because that person has filed a complaint, testified or assisted in any proceeding under this act or to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of that person having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by this act.

     e. For any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or to attempt to do so.

N.J.S.A. 10:5-12.

protected activity and the adverse action.  Krouse v. Am.
Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997); Cottrell v.
Zagami, LLC, 2010 WL 2652229, *3 n.8 (D.N.J. June 23, 2010) (JEI)
(citing Abramson v. William Paterson College of N.J., 260 F.3d
265, 286 n. 17 (3d Cir. 2001)); Lawrence v. Nat'l Westminster
Bank New Jersey, 98 F.3d 61, 70 (3d Cir. 1996) (explaining that
the NJLAD and ADA have been held to be governed by the same
standards).

Even if the plaintiffs' handicapped parking activism at
Rowan University was considered to be a protected activity under
the ADA and NJLAD, they have not shown that they were banned from
campus because of that protected activity.  See Cottrell v. J & R
Discount Liquor Gallery, Inc., 2010 WL 3906786, *10 (Sept. 30,
2010) (NLH) (citations omitted) (explaining that although it is
not settled whether a "mixed-motive" analysis or "but for"
analysis applies to ADA retaliation claims, plaintiffs still bear
the burden of persuasion in showing that their ADA protected
activity was a cause of the adverse action).

As detailed above, plaintiffs' January 30, 2006 ban from
campus was based on ten documented incidents over the course of
three months where plaintiffs acted hostile, harassing,
disruptive, and aggressive to Rowan University staff, students,
and visitors, including a nine year old child, a diabetic

pregnant woman, and a student with spinal meningitis.[9]
Similarly, the warning letter plaintiffs received in September
2008 was based on two documented incidents regarding plaintiffs'
harassing, disruptive, and threatening behavior.[10]  Although
plaintiffs' purported reason for coming onto campus was to ensure
that the university complied with ADA regulations, it was their
harassing and volatile behavior--and not their documentation of
parking violations--that was the basis for their ban.  Even if
plaintiffs had come onto campus to protect disabled persons'

---

[9]Defendants argue that the two-year statute of limitations
applicable to plaintiffs' ADA and NJLAD retaliation claims bars
their claims based on the January 30, 2006 ban because plaintiffs
did not file their complaint until April 10, 2008.  See Disabled
in Action of Pennsylvania v. Southeastern Pennsylvania Transp.
Authority, 539 F.3d 199, 208 (3d Cir. 2008) ("[T]he statute of
limitations applicable to claims under Title II of the ADA . . .
is the statute of limitations for personal injury actions in the
state in which the trial court sits."); Montells v. Haynes, 627
A.2d 654, 659 (N.J. 1993) (explaining that a two-year statute of
limitations applies to NJLAD claims); Disabled in Action, 539
F.3d at 209 (citations omitted) (explaining that "a federal cause
of action accrues when the plaintiff discovers, or with due
diligence should have discovered, the injury that forms the basis
for the claim").  Defendants are correct for Holland's claims,
since he never appealed the January 30, 2006 notice of his ban.
Cottrell's claims are not similarly barred because she appealed
the January 30, 2006, and her ban did not become final until
April 10, 2006 when Schoen issued his decision upholding the ban.
Cottrell filed her case here exactly two years thereafter.

[10]The Court questions whether a letter warning plaintiffs to
cease their disruptive behavior or face another ban and trespass
charges constitutes an adverse action, as they were not subject
to any restriction on their ability to come onto campus and
continue their ADA activism.  But even if the letter does qualify
as an adverse action, plaintiffs have failed to demonstrate that
their protected activity caused them to receive such a warning.

parking rights does not mean they can conduct themselves in any manner without consequence.  The cloak of the ADA does not extend its protections that far.

Defendants have provided voluminous documentation to demonstrate plaintiffs' conduct, the detrimental effect it had on others, and the reasoning of Rowan officials disallowing plaintiffs from visiting the campus.  In their opposition to summary judgment, plaintiffs deny that their conduct harassed, intimidated, threatened or otherwise disturbed campus visitors, students and staff, but they offer no proof to support their point of view.  A party opposing summary judgment must do more than just rest upon mere allegations and general denials.  Saldana v. Kmart Corp._, 260 F.3d 228, 232 (3d Cir. 2001).

Despite that failure, even if plaintiffs were to be believed, and all of defendants' evidence as to plaintiffs' harassing behavior were rejected, plaintiffs have still failed to provide any proof that their ADA-protected activities were the sole, or even partially motivating, factor in their ban from campus.  Consequently, defendants are entitled to summary judgment in their favor on plaintiffs' ADA and NJLAD retaliation claims.

### 3.  **Plaintiffs' constitutional and civil rights claims**

Plaintiffs claim that under the U.S. Constitution and New Jersey Civil Rights Act, they were denied due process, equal

protection, and their ability to freely express themselves.  All
of these claims are without merit.[11]

The Fourteenth Amendment provides that no "State [shall]
deprive any person of life, liberty, or property, without due
process of law."  U.S. Const. amend. XIV, § 1.  In order to
establish a violation of due process, plaintiffs must establish
that "(1) [they were] deprived of an individual interest that is
encompassed within the Fourteenth Amendment's protection of life,
liberty and property, and (2) the procedures available to [them]
did not provide him with due process of law."  Hill v. Borough of
Kutztown, 455 F.3d 225, 234 (3d Cir. 2006).  Plaintiffs have not
shown either.

First, plaintiffs have not articulated how they have a
constitutionally protected, substantive right to come onto
Rowan's campus.  See Albright v. Oliver, 510 U.S. 266, 272 (1994)
(explaining that substantive due process protection has "for the
most part been accorded to matters relating to marriage, family,
procreation, and the right to bodily integrity"); Adderley v.
State of Florida, 385 U.S. 39, 47 (1966) ("The State, no less
than a private owner of property, has power to preserve the

---

[11]Plaintiffs bring their constitutional violation claims
pursuant to 42 U.S.C. § 1983.  Because both § 1983 claims and
N.J. Civil Rights Act claims may only be asserted against a
"person," see Fields v. Essex County Probation Dept., 2011 WL
677255, *2 (N.J. Super. Ct. App. Div. 2011), these claims fail
against Rowan University and its police department.

property under its control for the use to which it is lawfully dedicated.").

Even if they did, plaintiffs have not shown how that right was taken from them without proper procedures.  Plaintiffs were informed of, and provided, a hearing regarding their ban from campus, the opportunity to further appeal that hearing decision, and the ability to appeal that decision to the New Jersey courts. Cottrell availed herself to the first appeal, but then did not participate in its process.  She did not appeal any further. Holland did not file any appeal at all.  The numerous opportunities to challenge the validity of Rowan's decision to ban plaintiffs from campus more than satisfies the Fourteenth Amendment's due process requirement.  See Cleveland Bd. of Ed. v. Loudermill, 470 U.S. 532, 542 (1985) ("The core of due process is the right to notice and a meaningful opportunity to be heard."). Simply because plaintiffs disagreed with the procedures or did not avail themselves of them does not amount to a due process violation.

Similarly, plaintiffs have not made out an equal protection violation claim.  In order to prove a claim under the Equal Protection Clause, plaintiffs must show that absent a rational basis for doing otherwise, they were treated differently from similarly situated persons.  Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); see also Vacco v. Quill, 521 U.S. 793, 799

(1997) (explaining that the Equal Protection Clause, which "commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,'" does not create any substantive rights, and "[i]nstead, . . . embodies a general rule that States must treat like cases alike but may treat unlike cases accordingly." . . . "If a legislative classification or distinction neither burdens a fundamental right nor targets a suspect class, we will uphold [it] so long as it bears a rational relation to some legitimate end" (citations omitted)). Plaintiffs have not provided any evidence that non-ADA-activists who have engaged in similar conduct have not been similarly banned from campus.  To the contrary, even though it is not defendants' burden of proof, defendants have provided evidence showing that Rowan has issued dozens of trespass notices to other individuals who have disrupted university operations through conduct ranging from lying on a bench to aggravated assault. Consequently, plaintiffs' equal protection claim fails.

Finally, plaintiffs' First Amendment claim is also unsustainable.  To establish a First Amendment retaliation claim, plaintiffs must prove the following elements: (1) they engaged in constitutionally protected conduct; (2) defendants took adverse action sufficient to deter a person of ordinary firmness from exercising his rights; and (3) the adverse action was prompted by plaintiffs' protected conduct.  Mitchell v. Horn, 318 F.3d 523,

20

530 (3d Cir. 2003).  Even if plaintiffs' actions were protected
First Amendment activity, and their ban from campus sufficiently
deterred them from continuing those activities, for the same
reasons expressed above with regard to plaintiffs' ADA and NJLAD
retaliation claims, plaintiffs have not provided any proof to
support that their ban from campus was motivated by their
protected activities.[12]  Accordingly, plaintiffs' First Amendment
claim fails as well.

### 4.    Plaintiff Holland's employment discrimination and retaliation claims

        Holland claims that he was discriminated against during his
time as a groundskeeper at Rowan, and fired from that position,
because of his ADA activism and association with Cottrell.
Defendants are entitled to summary judgment on these claims
because there is no evidence in the record that Holland complied
with the requirement that Holland exhaust his administrative
remedies by filing a charge with the Equal Employment Opportunity
Commission (EEOC) prior to filing suit.

        Before filing a complaint, a plaintiff alleging
discrimination under the ADA, or any discriminatory employment
practice, must exhaust his administrative remedies by filing a

---

[12]Moreover, simply because a place is open to the public, and
the public is allowed to roam about unhindered, it is not per se
converted into a public forum.  United States v. Grace, 461 U.S.
171, 177 (1983); Greer v. Spock, 424 U.S. 828, 837 (1976).

charge with the EEOC.  See 42 U.S.C. § 2000e-5(e)(1); 42 U.S.C. §

12117(a) (adopting Title VII enforcement scheme and remedies for

ADA); Williams v. East Orange Community Charter School, 396 Fed.

Appx. 895, 897 (3d Cir. 2010).  An individual must file a charge

within the statutory time period, either 180 or 300 days, and

serve notice upon the person against whom the charge is made.  A

claim is time barred if it is not filed within these time limits.

Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002).

Holland has not shown that he has complied with these procedures.

Thus, because of Holland's failure to comply with the EEOC

administrative process, all employment discrimination and

retaliation claims by Holland are barred.[13]

---

    [13]Even if Holland's claims relating to his employment were
not barred, they are substantively without merit.  Defendants
have provided substantial evidence that Holland was terminated
for failure to properly perform his grounds maintenance duties,
taking unauthorized breaks, taking excessive personal calls on
his cell phone, taking maintenance department vehicles to areas
of campus not relevant to his work, taking pictures during work
hours, tape recording conversations without the consent of co-
workers and supervisors, making co-workers feel uncomfortable,
and excessive absences.  Defendants have also provided evidence
to show that Holland was afforded numerous occasions to correct
these deficiencies.  Other than Holland's own disagreement with
his superiors' and co-workers' view of his work performance, he
has not provided any evidence to show that his ADA activism or
other protected activities caused his adverse employment actions.
See  Goosby v. Johnson & Johnson Medical, Inc., 228 F.3d 313,
318-19 (3d Cir. 2000) (citing Ezold v. Wolf, Block, Schorr and
Solis Cohen, 983 F.2d 509, 522 (3d Cir. 1993)) (explaining that
to prove a prima facie case of disparate treatment, a plaintiff
must offer sufficient evidence that he was: (1) a member of a
protected class, (2) qualified for the position, and (3)
nonmembers of the protected class were treated more favorably
than him); Muzslay v. City of Ocean City, 238 Fed. Appx. 785, 789

**<u>CONCLUSION</u>**

For the reasons expressed above, summary judgment must be granted in defendants' favor on all of plaintiffs' claims.  An Order consistent with this Opinion will be entered.


Date: <u>April 5, 2011</u>                  <u>  s/ Noel L. Hillman        </u>

At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.

---

(3d Cir. 2007) (citing <u>Abramson v. William Paterson College</u>, 260 F.3d 265, 286 (3d Cir. 2001)) (explaining that to establish a *prima facie* case for a retaliation claim, a plaintiff must show: (1) he engaged in a protected employee activity; (2) the employer took adverse action against him after, or contemporaneous with, his activity; and (3) a causal link exists between his activity and the employer's action against him).